## NANCY DUGGINS v. A. T. BURDETT, ET AL.

**Title by Adverse Possession.**

> One who purchases and receives conveyance of land and holds its possession continuously for more than forty years can not be dispossessed by one claiming to have purchased it from his grantor many years after the first purchase.

**Gaming Contract.**

> While one who has lost his real estate as a result of a game of chance may assail a conveyance made by him of such property, the conveyance can not be set aside upon mere rumors of such gaming contract and should not be disturbed by the chancellor where it is shown that such grantor lived for many years after the sale and conveyance, and made no effort to set the same aside, and that after his death and after a half of a century had elapsed it is for the first time sought by the grantor's heirs to set it aside.

### APPEAL FROM GARRARD CIRCUIT COURT.

May 9, 1885.

OPINION BY JUDGE HOLT:

Daniel Duggins died intestate in 1803, being at the time the owner of about 184 acres of land.

By his will his widow, Elizabeth Duggins, was to have the use of all his estate during life or widowhood, and then the land was to be sold, and the entire estate to be divided equally among his children. In 1824 the land was, by the consent of the widow, divided equally among their four sons, they being of age. John Duggins, in 1819, in writing, purchased from Alexander Duggins his one-fourth part of the land, the division having been made by three of their neighbors, and he was placed in possession of his portion as its owner.

The share upon which the improvements were situated fell to John Duggins, and upon it the widow continued to live during her life.

The Alexander Duggin's portion, which John Duggins had purchased, lay next to it; he subsequently purchased about nine acres of the share of his brother, Daniel Duggins.

The latter built a house upon his portion, as did also his brother, Thomas Duggins, upon his, and all of them improved the shares

which were respectively allotted to them. This division was acquiesced in for forty-five years, and until this suit was brought. During this period Daniel Duggins sold his portion, and his brother Thomas having died, the heirs of the latter sold their share.

There is some evidence tending to show that after the division, the widow continued to hold and claim the land as the life tenant, until her death in February, 1869; but it is in our opinion over-balanced by the facts already recited, and there can be but little doubt but what from 1824 until the bringing of this suit in 1869, a period of nearly half a century, John Duggins was in the actual possession of the Alexander portion of the land, claiming it as his own.

The record does not show when the latter died, save that it was a good many years after the land was divided, and it does not appear that he ever questioned his brother John's right to his portion of it. He left as his only heirs the appellees, Martha Stewart, and Daniel Duggins and the appellee. A. T. Burdett brought this action on July 27, 1869, alleging that he had purchased at an execution sale what he says was the one-half interest of said Daniel in his father, Alexander Duggins' part of the land, and that he also owned some other interests by purchase, and asking a sale of all the land, according to the will of Daniel Duggins, Sr., and a division of the proceeds. The various persons owning interests in this land were made parties, and at least one of them resisted a sale, claiming that the division made years before should not be disturbed. The court below correctly so ordered; but directed a partition among the present owners, and adjudged that the Alexander Duggins' portion did not belong to the heirs of John Duggins, he having died during the pendency of this suit, and that one-half of it should be allotted to the appellee, Burdett, and the right to this share is the one question presented by this appeal.

John Duggins relied upon his adverse possession of the land at the date of Burdett's alleged purchase under execution and for over forty years; and also upon his purchase from his brother. The answer expressly alleges the adverse possession, and which the reply upon knowledge and information denies the purchase, and that Alexander Duggins gave the possession to his brother, yet it does not deny that the latter had, as is expressly stated in the answer held it adversely for over forty years. The record does not

exhibit any judgment or execution or sheriff's deed to support the alleged purchase of Burdett; but it is manifest from all the circumstances shown, that it was made when the land was in the admitted adverse possession of John Duggins.

The sale to the latter is assailed upon the ground, that its consideration was money lost in gaming, and while doubtless it can be thus questioned and without resort to a qui tam action, yet it could not be shown by the rumor in the neighborhood, and the only other testimony in support of it is that of a single witness who says that about fifty years ago he heard John Duggins say that it was in part paid for by a gaming transaction, while the half-sister of Alexander Duggins says that she never knew of his playing at cards. In view of the fact that the latter lived for years after the sale to his brother, and it was allowed to stand, and that a half a century had elapsed from the time when it was made, until this suit was brought, during over forty years of which period the purchaser was in possession, the chancellor should not have held the sale invalid; and the judgment below is reversed with directions to adjudge the Alexander Duggins portion of the land to John Duggins' heirs and for such further proceedings as may be proper and in conformity with this opinion.            :

Judgment *reversed*.

*W. O. Bradley, Daney & Tomlinson, appellant.*
*Burdett & Walton, for appellees.*